STATE OF NORTH CAROLINA v. WESLEY AARON YANCEY

No. COA11-1409

(Filed 19 June 2012)

## 1. Confessions and Incriminating Statements—custody—Miranda—age—totality of circumstances

The trial court did not err in a breaking or entering case by concluding that defendant was not in custody during his 20 November 2009 encounter with detectives and that his inculpatory statements were not obtained in violation of *Miranda*. Although defendant gave his statement while in the detective's vehicle about two miles from his home, he sat in the front seat of the vehicle and the entire encounter lasted under two hours. Considering the totality of circumstances, defendant's age of 17 years and 10 months did not alter the conclusion that defendant was not in custody.

## 2. Search and Seizure—backpack—Fourth Amendment—consent

The trial court did not err in a breaking or entering case by concluding that the 15 October 2009 search of defendant's backpack was constitutional. Officers may pose questions, ask for identification, and request consent to search without seizing a person within the meaning of the Fourth Amendment, and because defendant consented to the officer's request to search his backpack, the items were admissible at trial.

Appeal by defendant from judgment entered 1 June 2011 by Judge Yvonne Mims Evans in Burke County Superior Court. Heard in the Court of Appeals 3 April 2012.

*Roy Cooper, Attorney General, by Stanley G. Abrams, Assistant Attorney General, for the State.*

*Andrew L. Farris, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant appeals from a consolidated judgment entered upon his plea of no contest to three counts of breaking or entering. He contends the trial court erred by entering an order denying his motion to suppress statements and evidence he contended were obtained in violation of his constitutional rights. We affirm.

The unchallenged findings of fact in the trial court's order on defendant's motion show the following. A little after 8:00 a.m. on 15 October 2009, Officer Jack Moss with the Valdese Police Department observed defendant, then seventeen, sitting on a sidewalk on Main Street in Valdese, North Carolina. Because defendant appeared to be of school-age, Officer Moss stopped and asked for his name and what he was doing. Defendant appeared nervous, continuously putting his hands in his pockets. After Officer Moss patted him down and asked whether he could look in defendant's backpack, defendant replied, "sure." In defendant's backpack, Officer Moss found loose coins, a plastic bag with coins and jewelry, and an old class ring. Officer Moss then drove defendant to the police department and called defendant's mother, who arrived later and took defendant home.

On 20 November 2009, Detectives David Stikeleather and David South with the Burke County Sheriff's Office, dressed in plain clothes and driving an unmarked vehicle, arrived at defendant's home and asked to speak with him. At that time, defendant had been identified as a possible suspect in several breaking or entering cases. Because defendant had friends visiting his home, the detectives asked defendant to ride in their car with them. The detectives told defendant he was free to leave the vehicle at any time, and they did not touch him. Defendant sat in the front seat of the vehicle while it was driven approximately two miles from his home. When the vehicle was stopped, Detective South showed defendant reports of the break-ins. The detectives told defendant that, if he was cooperative, they would not arrest him that day, but would turn in their paperwork to the district attorney. Defendant gave a statement admitting to committing the break-ins.

---

This Court's review of a trial court's ruling on a motion to suppress is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether its conclusions of law are legally correct, reflecting a correct application of legal principles to the facts found. *State v. Buchanan*, 353 N.C. 332,

336, 543 S.E.2d 823, 826 (2001). Because defendant fails to challenge any of the trial court's findings of fact, this Court is limited to a de novo review of the trial court's conclusions of law. *See State v. Carter*, —— N.C. App. ——, ——, 711 S.E.2d 515, 520, *motion to dismiss appeal allowed and disc. review denied*, 365 N.C. 351, 718 S.E.2d 147 (2011).

[1] On appeal, defendant first argues that he was "in custody" during his 20 November 2009 encounter with Detectives South and Stikeleather and that his inculpatory statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). Defendant specifically argues that he was in custody because he knew he was a suspect after the detectives confronted him with the case files from recent break-ins, because Detective South told defendant that if he was cooperative, the detectives would not arrest him that day, which he contends implied he would be arrested if he attempted to leave, and because he was driven two miles from his home. We conclude that, considering the totality of the circumstances, defendant was not in custody at the time he made the inculpatory statements.

The trial court's determination that a person is in custody under *Miranda* is a conclusion of law. *Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826. The *Miranda* rule "was conceived to protect an individual's Fifth Amendment right against self-incrimination in the inherently compelling context of custodial interrogations by police officers." *Id.* In addition to the warnings required under the *Miranda* decision, N.C.G.S. § 7B–2101(a) requires specific warnings in the context of custodial interrogation of a juvenile. Before warnings are required under *Miranda* and N.C.G.S. § 7B–2101(a), a juvenile must be in custody. *In re W.R.*, 363 N.C. 244, 247, 675 S.E.2d 342, 344 (2009). The appropriate inquiry for determining whether a defendant is in custody is, based on the totality of the circumstances, whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Buchanan*, 353 N.C. at 339, 543 S.E.2d at 828. "This determination involves an objective test, based upon a reasonable person standard, and is to be applied on a case-by-case basis considering all the facts and circumstances." *Carter*, —— N.C. App. at ——, 711 S.E.2d at 520 (internal quotation marks omitted). "While no single factor controls the determination of whether an individual is in custody for purposes of *Miranda*[,] our appellate courts have considered such factors as whether a suspect is told he or she is free to leave, whether the suspect is handcuffed, whether the suspect is in the presence of uniformed officers, and the

nature of any security around the suspect." *Id.* (alteration in original) (internal quotation marks and citation omitted). Furthermore, "so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer, its inclusion in the custody analysis is consistent with the objective nature of that test." *J.D.B. v. North Carolina,* —— U.S. ——, ——, 180 L. Ed. 2d 310, 326 (2011).[1]

*Miranda* warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *Buchanan,* 353 N.C. at 337, 543 S.E.2d at 827 (internal quotation marks omitted). Defendant voluntarily spoke with and rode with detectives and was told he was free to leave and that he could leave the vehicle at any time. Although defendant gave his statement while in the detective's vehicle approximately two miles from his home, he sat in the front seat of the vehicle and the entire encounter lasted under two hours. *See Carter,* —— N.C. App. at ——, 711 S.E.2d at 521-22 (holding the defendant was not in custody when he rode with detectives to the police station voluntarily, without being frisked or handcuffed, was told several times he was not in custody and was free to leave, and was not restrained during the interview); *State v. Hartley,* —— N.C. App. ——, ——, 710 S.E.2d 385, 394 (holding the defendant was not in custody when he was told on two occasions he was not under arrest, he voluntarily accompanied the officers to the fire department, he was never handcuffed, he rode to the station in the front of the vehicle, officers asked him if he needed food, water, or use of the restroom, he was never misled or deceived, he was not questioned for a long period of time, and the officers kept their distance during the interview and did not employ any form of physical intimidation), *disc. review denied,* 365 N.C. 339, 717 S.E.2d 383 (2011); *State v. Rooks,* 196 N.C. App. 147, 153, 674 S.E.2d 738, 742 (2009) (holding the defendant was not in custody when he was asked to enter an unmarked police car and answer ques-

---

1. The trial court's order from which defendant appeals was entered 1 June 2011 and *J.D.B.* was decided on 16 June 2011. Therefore, at the time of the trial court's order, *J.D.B.* had not yet been decided. However, "new rules of criminal procedure must be applied retroactively 'to all cases, state or federal, pending on direct review or not yet final,' " *State v. Zuniga,* 336 N.C. 508, 511, 444 S.E.2d 443, 445 (1994) (quoting *Griffith v. Kentucky,* 479 U.S. 314, 328, 93 L. Ed. 2d 649, 661 (1987)), and "[a] 'final' case is one in which 'a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.' " *Id.* at 511 n.1, 444 S.E.2d at 445 n.1 (quoting *Griffith,* 479 U.S. at 321 n.6, 93 L. Ed. 2d at 657 n.6). Thus, because this case is not yet final, the holding in *J.D.B.* applies here.

tions, he was told that he was not under arrest, the car was unlocked, he was left unattended after the officer completed the interview, and no evidence was presented indicating that the officer displayed a weapon or otherwise threatened him).

Defendant emphasizes that he was a juvenile at the time of the 20 November 2009 encounter, relying on *J.D.B.* for the proposition that a juvenile's age is a factor in the *Miranda* custody analysis. However, in *J.D.B.*, the United States Supreme Court acknowledged that, although the *Miranda* custody analysis included consideration of a juvenile suspect's age, that was "not to say that a child's age w[ould] be a determinative, or even a significant, factor in every case." *J.D.B.*, ___ U.S. at ___, 180 L. Ed. 2d at 326-27 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 669, 158 L. Ed. 2d 938, 954 (2004) (O'Connor, J., concurring) (explaining that a state-court decision omitting any mention of the defendant's age in the custody inquiry under *Miranda* was not unreasonable under [the Antiterrorism and Effective Death Penalty Act's] deferential standard of review where the defendant "was almost 18 years old at the time of his interview"), and *J.D.B.*, ___ U.S. at ___, 180 L. Ed. 2d at 339 (Alito, J., dissenting) (suggesting that "teenagers nearing the age of majority" are likely to react to an interrogation as would a "typical 18–year–old in similar circumstances")). In this case, defendant was 17 years and 10 months old at the time of the encounter. Considering the totality of the circumstances, defendant's age does not alter this Court's conclusion that defendant was not in custody during the 20 November 2009 encounter with detectives. This argument is overruled.

[2] Defendant next contends the 15 October 2009 search of his backpack was unconstitutional. Defendant asserts that Officer Moss approached him based on his suspicion that defendant should have been in school and argues that this was an investigatory stop within the meaning of the Fourth Amendment. Therefore, defendant argues that, after Officer Moss determined defendant should have been in school, he needed additional reasonable suspicion to request defendant's consent to search his backpack. Because the unchallenged findings of fact in the trial court's order show that the initial encounter between Officer Moss and defendant was consensual and that following the pat-down search of defendant, the encounter was again consensual, we disagree.

"It is well established that [l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public

places and putting questions to them if they are willing to listen." *State v. Garcia*, 197 N.C. App. 522, 528, 677 S.E.2d 555, 559 (2009) (alteration in original) (internal quotation marks omitted). "Rather, [t]he encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Id.* (alteration in original) (internal quotation marks omitted). "Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage—provided they do not induce cooperation by coercive means." *United States v. Drayton*, 536 U.S. 194, 201, 153 L. Ed. 2d 242, 251 (2002). Only when the encounter loses its consensual nature does it become an investigatory stop which must be supported by reasonable suspicion under the Fourth Amendment. *Garcia*, 197 N.C. App. at 528, 677 S.E.2d at 559.

When Officer Moss approached defendant, he asked him whether he should be in school, what his name was, and what he was doing. Defendant provided his name and said he was waiting for a friend to take him to school. However, defendant could not remember his friend's name and appeared nervous during the encounter, continuously putting his hands in his pockets. At that time, Officer Moss conducted a pat-down search of defendant. Defendant does not challenge the pat-down search. After the pat-down search, Officer Moss asked defendant if he could look in defendant's backpack and defendant replied, "sure." Because officers "may pose questions, ask for identification, and request consent to search" without seizing a person within the meaning of the Fourth Amendment, *see Drayton*, 536 U.S. at 201, 153 L. Ed. 2d at 251, and because defendant consented to Officer Moss's request to search his backpack, *see State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997) ("[A] search is not unreasonable within the meaning of the Fourth Amendment when lawful consent to the search is given."), there is no merit to defendant's argument that the search of his backpack was unlawful under the Fourth Amendment. We further hold that defendant's argument that the items seized from his backpack were obtained in violation of his *Miranda* rights is entirely without merit. The trial court did not err in concluding, "the items obtained from Defendant's [backpack] were voluntarily submitted to the police by consent and [we]re admissible at trial."

Affirmed.

Judges BRYANT and McCULLOUGH concur.